IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN K. DOTSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 06-cv-4004-JPG |
| -vs- ) | |
| ) | |
| BRP US INC., a Delaware Corporation, ) | |
| formerly known as BOMBARDIER MOTOR ) | |
| CORPORATION OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes on for consideration on the motion by defendant BRP US INC., formerly known as Bombardier Motor Corporation of America ("BRP") for summary judgment pursuant to Rule 56 of the Federal Rules fo Civil Procedure (Doc. 24). Plaintiff Brian K. Dotson ("Dotson") has responded to the motion (Docs. 28, 29 & 30), and BRP has replied to that response (Doc. 32).

I.      **Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases that

turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**II.     Facts**

The evidence viewed in the light most favorable to Dotson and the inferences reasonably drawn in his favor establish the following relevant facts.

Dotson began working at BRP's factory in Benton, Illinois, in September 1999. When he first began working for BRP, Dotson received a copy of the employee handbook, which contained the following policy:

> All FMLA [Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*] time runs concurrent with short term disability and workers' compensation or any qualifying event. When an employee has exhausted the twelve weeks of FMLA time during

> a rolling calendar year, employment with [BRP] may be terminated.
>
> An employee who is unable to work for more than twelve weeks will be considered automatically terminated at the expiration of that period, regardless of the reason for the inability to work.

BRP considered twelve weeks to be equivalent to 480 hours. BRP maintained this policy during all times relevant to this litigation.

On January 7, 2004, Dotson injured his back at work and subsequently filed a workers' compensation claim. As a result of that injury, Dotson was only able to work light duty for a few partial days the week after his injury, and was then unable to work at all from January 16, 2004 until the summer of 2004. As of January 16, 2004, BRP had calculated that Dotson had accumulated 286 hours of leave during the preceding year for workers' compensation and short term disability leave. In June 2004, Dotson's doctor released him for partial duty, and in August 2004, his doctor released him for full duty. He continued to be paid temporary total disability workers' compensation benefits during his entire absence.

Shortly after he stopped working in mid-January 2004, BRP personnel threatened to terminate Dotson immediately if he did not sign forms requesting FMLA leave for his absence. Dotson did not believe his absence was required to be taken under the FMLA and he questioned the requirement, but he signed the forms anyway. BRP's policy, however, was to count leave taken for medical reasons toward the twelve weeks of FMLA leave time regardless of whether the employee applied for it.

On January 19, 2004, BRP wrote Dotson a letter informing him that it believed he had used 286 hours of his FMLA leave in the preceding year and that he had 194 hours remaining. Again, on February 10, 2004, BRP wrote Dotson a letter informing him that by its calculations

he would exhaust his FMLA leave period at the end of the day on February 23, 2004.

On February 24, 2004, BRP calculated that Dotson had accumulated more than 480 hours of absence in the preceding 365 days and terminated him that day. Krystal Aken, BRP's human resources director and the person responsible for terminating Dotson, knew he was receiving workers' compensation benefits at the time she made the decision to terminate him.

On January 4, 2006, Dotson filed this lawsuit. An amended complaint filed March 17, 2006, clarified that Dotson alleges a wrongful discharge claim under state law. Dotson believes BRP unlawfully terminated him in retaliation for filing a workers' compensation claim for his January 7, 2004, injury.

BRP asks the Court for summary judgment on the ground that no reasonable jury could find BRP terminated Dotson because he filed a workers' compensation claim. It presents evidence that it fired Dotson because of excessive absenteeism, not because he filed a workers' compensation claim. Alternatively, it argues that Dotson suffered no damages from his termination because he was unable to return to his regular job in August 2004 anyway due to his physical condition and BRP was under no obligation to find him a "light duty" job he was capable of doing.

Dotson contests that he was physically unable to return to his job on the day he was terminated. He also believes that his leave while on workers' compensation was not properly counted as under the FMLA.

The Court need not address the parties' dispute about whether Dotson suffered any damages as a result of his termination because of his actual physical condition on the day he was terminated; this matter can be resolved considering only the evidence regarding BRP's reason

for terminating Dotson.

### III.     Analysis

Viewing the evidence and drawing all reasonable inferences in favor of Dotson, the Court finds that no reasonable jury could find he was the victim of a retaliatory discharge and that BRP is therefore entitled to judgment as a matter of law.

Although employment in Illinois is generally at will, Illinois law forbids an employer to retaliate against an employee because he filed a claim under the Workers' Compensation Act, 820 ILCS 305/1 *et seq*. *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357 (Ill. 1978); 820 ILCS 305/4(h). In order to prevail on a workers' compensation retaliatory discharge claim under Illinois law, a plaintiff must ultimately show that he

> (1) was the defendant's employee before his or her injury; (2) exercised a right granted by the Workers' Compensation Act; and (3) was discharged from his or her employment with a causal connection to his or her filing a workers' compensation claim.

*Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1062 (7th Cir. 2001); *accord Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 767 (7th Cir. 1994). BRP does not contest that Dotson can prove the first two elements, but it challenges his ability to prove the third – a causal connection.

The plaintiff bears the burden of showing affirmatively a causal connection between his termination and his filing a workers' compensation claim. *Feldman v. American Mem'l Life Ins. Co.*, 196 F.3d 783, 792 (7th Cir. 1999). "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992); *accord Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998); *Hiatt*, 26 F.3d at 767. Excessive absenteeism, if not a pretext, is a valid

basis for discharging an employee, even if the employee is absent because of an injury that is compensable under the Workers' Compensation Act. *Hartlein*, 601 N.E.2d at 728.

At the summary judgment stage, if a retaliatory discharge claim is in federal court, the plaintiff may use a direct method or an indirect, burden-shifting method to resist summary judgment. *Hiatt*, 26 F.3d at 767. *But cf. Carter v. Tennant Co.*, 383 F.3d 673, 678 (7th Cir. 2004) (questioning availability of indirect, burden-shifting method in federal court for state law retaliatory discharge claims); *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) (Posner, J., concurring) (same). *Compare Clemons*, 704 N.E.2d at 407-08 (burden shifting mechanism unavailable in state court).

A.  Direct Method

In response to BRP's motion, Dotson has presented no evidence directly connecting his workers' compensation claim with his termination. Under the direct method, the plaintiff must present evidence of a causal connection between a statutorily protected activity and an adverse action taken by the employer. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *see Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 768-69 (7th Cir. 1994). Under the direct method of proving retaliation, the plaintiff may rely on direct evidence of an acknowledgment of retaliatory intent or on circumstantial evidence sufficient to provide a basis for inferring retaliation. *Rogers v. City of Chicago*, 320 F.3d 748, 753-54 (7th Cir. 2003). Historically, direct evidence has been viewed as evidence that is within a witness's personal knowledge and does not require drawing an inference to support the proposition for which it is offered, and circumstantial evidence has been viewed as evidence requiring an inference. *Sylvester v. SOS Children's Villages Ill., Inc.*,

453 F.3d 900, 903 (7th Cir. 2006).  This distinction is vague and irrelevant;  any evidence supporting an inference of discriminaton is sufficient to withstand summary judgment under the direct method.  *Id.*  Such evidence includes "an admission by the decisionmaker that his actions were based upon the prohibited animus," *Rogers*, 320 F.3d at 753 (internal quotations omitted), as well as "(1) suspicious timing, ambiguous statements, etc., (2) evidence that similarly situated employees were treated differently, or (3) evidence that the employee was qualified and passed over for the job and the employer's reason for the difference in treatment is a pretext for discrimination," *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 762 (7th Cir. 2001).

       Dotson has presented no direct or circumstantial evidence of retaliation.  Nothing in the record even approaches a direct admission that BRP terminated Dotson because of his workers' compensation claim.  He does not suggest suspicious timing, although even if he had, that fact standing along would not support a reasonable inference of retaliation.  In the absence of other evidence suggesting the protected activity was related to an employee's termination, "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000); *accord Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006).  Neither does Dotson point to any similarly situated employees who were treated differently, to any evidence that he was actually able to return to work or that he was not actually subject to termination for absenteeism under BRP's absenteeism policy, or to any other circumstantial evidence from which a reasonable jury could infer that BRP terminated him because he filed a workers' compensation claim.  On the contrary, Dotson's arguments focus on policy considerations rather than BRP's actual motives.  For example, without citation to any authority, he argues that the Illinois

Workers' Compensation Act gives him "the absolute right to be off work while under medical treatment so long as the injury was causally connected to his employment" (Pl.'s Mem. Opp'n Summ. J., Doc. 29 at 7) and that to allow an employer to fire a worker for absenteeism "would be to effected [sic] invalidate the Illinois Workers' Compensation Act" (*id.* at 9). He believes that BRP could not force him to take leave under the FMLA and could not therefore fire him for exhausting his leave under the FMLA. He also suggests that BRP could not terminate him for being unable to do his old job without giving him an opportunity to try to perform his old job, that is, until August 2004 when he was fully released by his doctor to return to work. However, none of these arguments establish any basis for finding a causal connection between Dotson's workers' compensation claim and his termination.

Furthermore, BRP has put forth a valid reason for terminating Dotson – his failure to comply with its absenteeism policy. *See Hartlein*, 601 N.E.2d at 728 (excessive absenteeism, if not pretextual, is valid basis for termination even if absenteeism caused by compensable injury). Dotson argues that the exhaustion of his twelve weeks of leave was a pretext for retaliation, but he has not presented any evidence that reasonably leads to this inference. Pretext can be established by showing that the employer did not honestly believe the reasons it gave for its action and is just "covering its tracks." *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000). Again, Dotson offers policy reasons why BRP's decision was not wise and may have been unlawful[1], but he does not point to any evidence that the proffered reason was not truthful, the

---

[1] The Court notes that it is perfectly permissible under the FMLA for an employer to count an individual's paid vacation, personal or medical or sick leave toward the twelve-week leave period mandated by the statute. *See* 29 C.F.R. §§ 825.207(d)(2), 825.216(d) & 825.702(d)(2).

only relevant question.  *See Clemons*, 704 N.E.2d at 407 ("The alleged illegality of defendant's explanation for plaintiff's discharge is not relevant here and does [not] preclude the employer from offering that reason as a defense to plaintiff's cause of action.").  On the contrary, his termination appears to be in accordance with BRP's written absenteeism policy contained in its employee handbook.  No reasonable factfinder could infer from the record in this case that BRP's proffered reason for terminating Dotson was pretextual.

For these reasons, Dotson cannot withstand summary judgment using the direct method.

B. *Indirect Method*

Dotson cannot avoid summary judgment under the indirect *McDonnell Douglas* method either.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under that procedural device, a plaintiff must first establish a *prima facie* case by showing that (1) he engaged in a statutorily protected activity, (2) he performed his job according to his employer's legitimate expectations, (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.  *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004); *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).  There is no need to show a causal connection using the indirect method.  *Rhodes*, 359 F.3d at 508; *Stone*, 281 F.3d at 644.  If the plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action.  *Hudson*, 375 F.3d at 559; *Rhodes*, 359 F.3d at 508**.**  If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext.  *Hudson*, 375 F.3d at 559; *Rhodes*, 359

F.3d at 508.

Dotson cannot establish a *prima facie* case of retaliation.  First, he cannot establish that he met BRP's legitimate expectations that he would not miss more than twelve weeks of work in any rolling calendar year.  Second, he has not pointed to any similarly situated employees who did not file workers' compensation claims and who were treated better than he was.

Even if he had been able to establish a *prima facie* case, as discussed in the previous section of this order, he has not presented any evidence that reasonably leads to the conclusion that BRP's proffered non-retaliatory reason for terminating Dotson was a pretext.

For these reasons, Dotson cannot withstand summary judgment using the indirect method.

In sum, the Court finds that there is no evidence from which a reasonable jury could find that Dotson's worker's compensation claim was causally related to his termination.  There is no genuine issue of material fact, and BRP is entitled to summary judgment as a matter of law.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** BRP's motion for summary judgment (Doc. 24) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

In addition, the Court will entertain a motion by BRP for its attorney fees and expenses incurred and preparing for and attending the in-court status conference held on January 23, 2007, if the motion is filed on or before February 9, 2007.

**IT IS SO ORDERED.**
**DATED this 31st day of January, 2007.**

                                                          s/ J. Phil Gilbert
                                                          **UNITED STATES DISTRICT JUDGE**